STATE v. RUSSELL ALLEN HAGUE.

229 N. W. 2d 168.

May 9, 1975—No. 44667.

---

[4] See, Minnesota Continuing Legal Education, Minn. Practice Manual 56, Alcohol Abuse and Drug Abuse, pp. 51-52.

*C. Paul Jones*, State Public Defender, and *Ronald L. Haskvitz*, Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Richard B. Allyn* and *Michael P. Berman*, Special Assistant Attorneys General, and *Arvid L. Wendland*, County Attorney, for respondent.

PER CURIAM.

Defendant contends on this appeal from judgment of conviction of aggravated assault, Minn. St. 609.225, subd. 2, that the trial court erred in accepting the guilty plea upon which the conviction was based and in sentencing him to 5 years of delayed probation to commence upon defendant's release from prison, where he was confined on a drug conviction. We affirm.

The charge to which defendant pleaded guilty arose out of an incident on the evening of March 17, 1973, when defendant allegedly intentionally pointed a shotgun at a police officer who arrived at defendant's house in response to a call by defendant's brother. At the hearing on defendant's change of plea from not guilty to guilty, defendant, in answer to questions by the trial court and counsel, testified that while driving home to Blue Earth after an evening of beer drinking he was stopped by an Elmore police officer, who issued him a ticket for speeding. Defendant testified that as he continued home he became increasingly enraged over what he believed to be continuing harassment by area police officers, and once home he loaded a .12-gauge shotgun owned by his father and began shouting wildly. He testified that he had possibly even said something about killing a policeman. Defendant testified that apparently his brother called the Blue Earth police, but at the time he was unaware of the call. Defendant testified that by the time the officers had arrived he had begun to cool down. Defendant admitted that when the of-

ficer entered the home he had pointed a gun at the officer but said that he had not done so intentionally or with any desire to frighten the officer.

Refusing to accept the guilty plea on the basis of this testimony, the trial court stated that it wanted to hear the complainant and that it would accept the plea only if defendant would testify that it was possible that the complainant's testimony was correct. The complainant police officer then testified that when he entered the house defendant was pointing the gun directly at his chest with his right hand by the trigger; that defendant continued pointing the gun at him even after being told to put it down; that during this entire time defendant was screaming incoherently; that he was afraid defendant might use the gun; and that the confrontation stopped only when defendant's brother disarmed him by coming from the side and pushing the gun upward. After hearing this testimony and a statement by defendant that it could have happened this way, the court accepted the plea.

Prior to sentencing, the county attorney and the public defender urged the court to sentence defendant to delayed probation, that is, probation to begin upon defendant's release from St. Cloud Reformatory, where he was then serving a maximum term of 5 years on a drug charge. Agreeing with counsel, the trial court sentenced defendant to the 5-year maximum term provided by law with execution to commence upon defendant's parole, and with execution stayed and defendant being on probation for a 5-year period after his release from St. Cloud. The trial court stated that the purpose of this arrangement was to extend the period during which defendant will be under supervision after his release.

1. In deciding the first issue, we have considered the recent case of Beaman v. State, 301 Minn. 180, 221 N. W. 2d 698 (1974), where we held that the petitioner should be permitted to withdraw her guilty plea to a charge of first-degree manslaughter because the trial court did not interrogate her in suffi-

cient detail about the events underlying the charge. However, this case is similar to the Beaman case in only one respect, that being that certain statements made by defendant at the time he entered the plea were inconsistent with the plea. The case differs from Beaman in at least two important respects. First, the record in this case shows that the trial court interrogated defendant in great detail in an attempt to determine precisely what happened and, in fact, refused to accept defendant's plea until defendant had admitted that his version may have been inaccurate and that it was possible that the complainant's version was accurate. Second, there is nothing in the record, as there was in Beaman, to indicate that defendant entered his plea against the advice of counsel. The question on this appeal is somewhat similar to that presented in State v. Fisher, 292 Minn. 453, 193 N. W. 2d 819 (1972). In Fisher, the defendant because of amnesia, real or feigned, could not unequivocally admit guilt but, acting on advice of counsel, entered a plea of guilty because the evidence of guilt (some of which was placed on the record) was strong. In that case we held that the trial court properly accepted the plea, and we so hold in this case because the record in this case contains strong evidence of defendant's guilt and it appears that defendant entered his plea after receiving advice from counsel, who presumably was quite aware of defendant's version of the incident.

2. In attacking the sentence, defendant urges this court to hold that the 5 years began to run as of the date the sentence was imposed. Defendant makes two basic arguments in support of this request.

First, defendant argues that under Minn. St. 609.15, subd. 1,[1]

---

[1] Minn. St. 609.15, subd. 1, reads in relevant part: "* * * [W]hen a person who is under sentence of imprisonment in this state is being sentenced to imprisonment for another crime committed prior to or while subject to such former sentence, the court in the later sentences shall specify whether the sentences shall run concurrently or consecutively. If the court does not so specify, the sentences shall run concurrently."

the trial court's sentence must be considered a concurrent sentence and that, therefore, the 5 years of probation began to run immediately. There is no merit whatever to this argument because the trial court made clear its intention that the sentence be consecutive when it stated that execution of the sentence was to commence upon defendant's release from St. Cloud Reformatory on parole. As this court noted in State v. Morrissey, 271 Minn. 123, 124, 135 N. W. 2d 57, 59 (1965), a "consecutive sentence is one which commences at the termination of another term of imprisonment."

Defendant's second argument is that under Minn. St. 609.135, subd. 2, the maximum term for a stay of execution of sentence is the same as "the maximum period for which the sentence of imprisonment might have been imposed" and that therefore the probation should cease 5 years after the date of imposition of sentence. We have concluded that in the case of a stay of execution of sentence the provision refers to the length of probation once it commences and does not mean that the time limit on probation in such a case commences at the time of imposition of sentence. In other words, we believe that for purposes of this provision the stay commences when execution of the sentence would otherwise normally commence and that the period between imposition and execution should not be considered a "stay." We have not found any Minnesota cases in point,[2] but it appears that in Federal courts which order delayed probation, the probation time limit does not begin to run until probation begins. See, 2 Wright, Federal Practice and Procedure, § 529.

Affirmed.

---

[2] But see, State ex rel. Lillemoe v. Tahash, 280 Minn. 176, 159 N. W. 2d 99 (1968).