STATE EX REL. CONRAD KAUS v.
BRUCE W. McMANUS AND OTHERS.

238 N. W. 2d 597.

January 9, 1976—No. 45820.

*C. Paul Jones,* State Public Defender, and *R. James McNulty,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *Thomas J. Foley,* Special Assistant Attorney General, for respondents, warden of the State Prison, commissioner of corrections, and members of Minnesota Corrections Authority.

Heard before Kelly, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

The issue on this appeal is whether appellant, Conrad Kaus, was denied due process of law when his work-release program was revoked by the Minnesota Corrections Authority. The district court discharged appellant's writ of habeas corpus. We affirm.

On October 29, 1964, appellant was convicted on two counts of second-degree murder and sentenced to two concurrent terms of 0 to 40 years. On March 11, 1974, appellant was released from the Minnesota State Prison under a work-release program pursuant to Minn. St. 241.26. On March 19, 1974, appellant left the work-release program and did not return. Six days later, he turned himself in to the authorities and was returned to Minnesota State Prison. A preliminary hearing was held where it was determined that probable cause existed to believe that appellant had violated the conditions of his work-release agreement.

A work-release revocation hearing, at which appellant was represented by counsel, was held on June 18, 1974. Prior to the hearing, the Minnesota Department of Corrections gave appellant written notice that his failure to return to the work-release program would be the basis for a report to the Minnesota Corrections Authority (MCA) that he was in violation of his work-release agreement. During the course of the hearing appellant admitted that he had failed to return to his work-release program, and thus the MCA found appellant to be in violation of

his work-release agreement. However, the dispositional phase of the hearing was continued for 30 days. Two days after the hearing the MCA granted three temporary paroles to appellant. During the first temporary parole, the St. Paul police received a complaint alleging that appellant had assaulted William Schwerm, who was also a parolee, but no complaint was ever signed by Schwerm. On July 10, 1974, the MCA, without any additional hearing, rescinded the two remaining temporary paroles and continued appellant in prison until review in June 1975.

Upon a written request of appellant's attorney, the MCA agreed to hold a hearing on the dispositional phase of appellant's work-release revocation. In his request, appellant's attorney specifically indicated that the conduct of appellant while on temporary parole was a relevant issue for consideration. On December 4, 1974, the dispositional hearing was held, after which the MCA decided to revoke appellant's work release and continue him in prison until June 1975. Appellant was again represented by counsel at the dispositional hearing.

On February 13, 1975, a habeas corpus hearing was held in Washington County District Court. Based on the stipulated facts and exhibits submitted at the hearing, the trial court ordered appellant's writ of habeas corpus discharged, and appellant appealed to this court.

The principal issues are whether appellant was denied his constitutional right to due process of law when he was continued in prison after the June 18, 1974, hearing; and whether he was denied constitutional rights when his work release was revoked after the December 4, 1974, hearing.

In Morrissey v. Brewer, 408 U. S. 471, 92 S. Ct. 2593, 33 L. ed. 2d 484 (1972), the United States Supreme Court held that a parolee's liberty involves significant values within the protection of the due process clause of the Fourteenth Amendment. Therefore, termination of that liberty requires an informal hear-

ing to assure that (408 U. S. 484, 92 S. Ct. 2602, 33 L. ed. 2d 496)—

"* * * the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."

The Supreme Court held that the revocation decision consists of two parts: the first part involving the "retrospective factual question" of whether the parolee has in fact violated the conditions of his parole (480 U. S. 479, 92 S. Ct. 2599, 33 L. ed. 2d 493); the second part involving the question of whether the parolee should be recommitted to prison. The court elaborated (408 U. S. 480, 92 S. Ct. 2599, 33 L. ed. 2d 493):

"* * * The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary."

Thus (408 U. S. 488, 92 S. Ct. 2603, 33 L. ed. 2d 498):

"* * * The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."

The court proceeded to hold that the revocation hearing must conform to the "minimum requirements of due process" which specifically include (408 U. S. 489, 92 S. Ct. 2604, 33 L. ed. 2d 499):

"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and

documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

In State ex rel. Djonne v. Schoen, 299 Minn. 131, 134, 217 N. W. 2d 508, 510 (1974), this court held that—

"* * * the doctrine of Morrissey applies to revocations under both the work-release provisions of § 241.26 and the parole provisions of § 243.05."

Thus, a parole board must provide an inmate a hearing in accordance with the due process requirements set forth in Morrissey before it may revoke an inmate's work release.

The initial issue in the instant case is whether the revocation hearing held June 18, 1974, satisfied the minimum due process requirements set forth in Morrissey so as to justify the MCA decision of July 10, 1974, to revoke appellant's work release and continue him in prison. Appellant's principal contention is that the June 18, 1974, hearing was incomplete because the dispositional part or phase of the hearing was continued for 30 days. Respondents counter that it was only the dispositional *decision* and not the dispositional *phase* of the hearing which was continued. However, it is clear from the record that it was the dispositional phase of the hearing that was continued. First, the June 18 hearing record indicates that the dispositional phase was not completed. The MCA stated at the conclusion of the hearing:

"* * * It is the finding of the MCA that Mr. Kaus has violated his work release and we will now then return to Phase II and a decision of the authorities that Phase II be heard again in 30 days, the explanation for this is that Mr. Kaus will reappear before the Board in 30 days."

Further, at the December 4, 1974, hearing, the MCA stated:

"* * * However, at that point we did not go into Phase 2 or the dispositional phase of the hearing, but continued the hearing for 13 days for the purpose of considering some temporary— 30 days—the purpose being that the MCA was to consider a series of temporary paroles on June 20. We, however, did that. We granted a series of temporary paroles. We never went back to the dispositional phase of the hearing. We intend to do that today."

Morrissey specifically holds that "[t]he parolee must have an opportunity to be heard and to show * * * that the violation does not warrant revocation." 408 U. S. 488, 92 S. Ct. 2603, 33 L. ed. 2d 498. Therefore, the MCA "must consider mitigating circumstances and rehabilitative potential as well as the existence of parole violations before determining that reincarceration is appropriate." Sutherland v. District of Columbia Board of Parole, 366 F. Supp. 270, 272 (D. D. C. 1973). In light of the statements made by the MCA, it is clear that the June 18 hearing was incomplete and cannot alone provide a constitutionally adequate basis for the decision of July 10 to revoke appellant's work release.

However, in State ex rel. Djonne v. Schoen, *supra,* we indicated that if an inmate's work release is revoked without a hearing the appropriate remedy is to afford such a hearing to the inmate; thus, even though the June 18, 1974, hearing was deficient, the revocation hearing on December 4, 1974, may have remedied the deficiencies. Appellant argues, however, that the December 4 hearing was also defective. Specifically, appellant contends that the MCA focused primarily on the seriousness of appellant's original offense and upon appellant's alleged conduct during two temporary paroles rather than on the circumstances surrounding the violation of appellant's work-release conditions. Appellant reasons that on June 20, when the MCA granted appellant three temporary paroles, it had in effect concluded that

appellant's work-release violation did not warrant total revocation but only indicated that a more gradual reentry program would be appropriate. Therefore, appellant argues, the July 10 decision to rescind the two temporary paroles [1] was based upon an event that occurred since June 20, namely, the alleged assault on Schwerm.

While the claimed assault on Schwerm does appear to have been a factor in the July 10 decision, it does not necessarily follow that the decision was based solely on that factor. Further, it is clear that appellant's conduct during his temporary parole and the nature of his original offenses are proper considerations in the revocation decision. As stated in Morrissey, the dispositional decision involves application of expertise by the parole authority in predicting "the ability of the individual to live in society without committing antisocial acts." 408 U. S. 480, 92 S. Ct. 2599, 33 L. ed. 2d 493. Surely, in the exercise of its discretion to predict an individual's future conduct, the MCA may consider his past behavior. We therefore reject appellant's contentions in this regard.

Appellant also claims several other alleged infirmities in the December 4 hearing. Among those we deem necessary to discuss in this opinion is appellant's contention that the delay between the June 18 hearing, which determined that appellant had violated the conditions of his work release, and the December 4 dis-

---

[1] Appellant also argues that the rescission of the two remaining temporary paroles without a hearing violated his right to due process. However, appellant did not raise this issue in the trial court, and we decline to consider this issue when it has been raised for the first time on this appeal. Automotive Merchandise, Inc. v. Smith, 297 Minn. 475, 477, 212 N. W. 2d 678, 679 (1973). We note, however, that although appellant cites In re Prewitt, 8 Cal. 3d 470, 105 Cal. Rptr. 318, 503 P. 2d 1326 (1972), and Means v. Wainwright, 299 So. 2d 577 (Fla. 1974), certiorari denied, 419 U. S. 1116, 95 S. Ct. 796, 42 L. ed. 2d 815 (1975), as authority for the proposition that the rescission of an unexecuted grant of parole constitutes a "grievous loss" and therefore requires a due process hearing, neither of these cases involved rescission of *temporary* parole.

positional-phase hearing denied appellant the prompt hearing to which he was entitled. On this point, we stated as follows in State ex rel. Djonne v. Schoen (299 Minn. 134, footnote 1, 217 N. W. 2d 510):

"If it should appear that witnesses on behalf of appellant have become unavailable or he is otherwise prejudiced by the delay, there may be a different issue of constitutional due process, in which case the commissioner of corrections should consider expungement of the department's records."

While the delay that occurred was unfortunate and ill advised, we have concluded, based upon our review of the record, that appellant was not prejudiced by the delay.

A more serious alleged infirmity in the December 4 hearing is the failure of the MCA to provide a written statement of reasons for its decision. As stated in Morrissey, due process requires "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U. S. 489, 92 S. Ct. 2604, 33 L. ed. 2d 499. Such a statement facilitates judicial review by, among other things, enabling the reviewing court to precisely determine the reasons for the actions taken; promotes careful consideration by the decision-maker and compels it to state relevant points; promotes rehabilitation by relieving the inmate's frustration caused by lack of information detailing the precise reasons for the action taken; and advances the establishment of a body of rules, principles, and precedents which will promote consistency by the MCA. See, Cooley v. Sigler, 381 F. Supp. 441 (D. Minn. 1974).

However, we have concluded that remanding this case for a written statement of evidence and reasons would serve no meaningful purpose. The original notice given to appellant clearly stated that the violation which might justify revocation of his work release was the fact that he had left his place of work and failed to return. Appellant was aware of this significant breach of his work-release conditions from the very beginning and, in

fact, admitted it at the June 18 hearing. It is obvious that upon remand the MCA would undoubtedly state those facts as the reason for its decision.

The methods and procedures followed by the MCA in its consideration of this matter, including the long period of time between the June 18, 1974, and the December 4, 1974, hearings, and the failure of the MCA to prepare and file a written statement of the evidence relied upon and the reasons for revoking the work release, are far from a model of correct and adequate procedure. However, our decision in Djonne, which established the constitutional due process requirement of an informal hearing in an alleged work-release violation, was not filed until April 22, 1974. We were assured at oral argument that the MCA is currently in the process of revising its rules and procedures to conform to the requirements of the Djonne decision. Therefore, with the assurance that the MCA is endeavoring in good faith to comply with these mandatory constitutional procedures, we have concluded to affirm the trial court.

Affirmed.