## ARLEN HOWARD PEARSON v. STATE.

241 N. W. 2d 490.

April 30, 1976—No. 45734.

*C. Paul Jones,* State Public Defender, and *David Gross,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Edward M. Laine,* Special Assistant Attorney General, and *John F. Corbey,* County Attorney, for respondent.

PER CURIAM.

This is an appeal from an order of the district court denying defendant's petition for postconviction relief. In 1973 defendant

pleaded guilty to a charge of theft, Minn. St. 609.52, subd. 2(1), and pursuant to a plea agreement the trial court stayed imposition of sentence for a period of 5 years. The trial court later revoked probation and sentenced defendant to prison for a maximum of 5 years on the ground that defendant had violated certain conditions of his probation. Defendant then filed a petition for postconviction relief in which he requested that the judgment of conviction based on the guilty plea and the revocation of probation and imposition of sentence be declared invalid on the grounds that (1) at the time of the entry of the guilty plea he had denied any criminal intent, and (2) that there was no evidence that he had materially violated his probation. The postconviction court after a hearing denied defendant's petition. We affirm.

1. Defendant's contention that his guilty plea should not have been accepted by the trial court is based on the fact that at the time of the entry of the plea he testified that he did not *think* he intended to steal certain camera equipment, the property in question. What defendant testified was that he was intoxicated at the time he took the property and that he could not remember what had happened, but that he did not think he intended to steal the items. He also testified at that time that he knew he had a right to have the intoxication defense considered by the jury in determining whether he had the necessary criminal intent, but that he had made an informed decision upon the advice of counsel to plead guilty and waive that right.

Upon this record we do not believe that the trial court erred in accepting the plea. State v. Hague, 304 Minn. 139, 229 N. W. 2d 168 (1975) ; State v. Fisher, 292 Minn. 453, 193 N. W. 2d 819 (1972).[1] Cf. Beaman v. State, 301 Minn. 180, 221 N. W. 2d 698 (1974). In so holding, we do not decide whether a trial court may, under extraordinary circumstances, accept a defendant's guilty

---

[1] See, also, State ex rel. Crossley v. Tahash, 263 Minn. 299, 116 N. W. 2d 666 (1962); State ex rel. Norgaard v. Tahash, 261 Minn. 106, 110 N. W. 2d 867 (1961).

plea notwithstanding a defendant's *unequivocal* denial of guilt. See, North Carolina v. Alford, 400 U. S. 25, 91 S. Ct. 160, 27 L. ed. 2d 162 (1970).

2. On May 31, 1974, the court ordered defendant to appear for a hearing on alleged violations of his probation pursuant to Minn. St. 609.14 and scheduled a hearing for July 5, 1974. Defendant failed to appear although he had knowledge of the hearing, which was subsequently held on July 26, 1974. Probation was then revoked and defendant was sentenced to prison. Two issues are raised relating to the revocation of defendant's probation: Whether the procedures followed violated defendant's right to due process and whether the trial court abused its discretion in revoking probation.[2]

In Gagnon v. Scarpelli, 411 U. S. 778, 93 S. Ct. 1756, 36 L. ed. 2d 656 (1973), the Supreme Court held in part that due process mandates the same types of hearing in probation revocation cases as in parole revocation cases, i. e., the same types of hearing specified by the court earlier in Morrissey v. Brewer, 408 U. S. 471, 92 S. Ct. 2593, 33 L. ed. 2d 484 (1972).

The first type of hearing mandated by Morrissey and Gagnon is a preliminary revocation hearing, which is to be held as soon as convenient after the defendant is arrested. The main reason for such a hearing is that there might be a significant lapse of time between the arrest and a decision on whether to revoke. The purpose of this hearing is to determine whether there is probable cause to believe that the parolee or probationer has violated conditions of his parole or probation. The probable cause determination must be made by someone other than the supervisory parole or probation officer, and this person or board must be neutral and detached. Additionally, the parolee or probationer must receive notice of the hearing; the notice must allege acts constituting violations of the conditions of parole or probation; the defendant must have the opportunity to appear, to speak, and

[2] Defendant makes no claim that the procedures followed violated Minn. St. 609.14.

to bring documents or witnesses; and the defendant generally has the right to have any persons who have information supporting the revocation to be questioned in his presence. Finally, the hearing officer must state the reasons for his decision and summarize the evidence he relied on but need not make formal findings or conclusions.

Prior to a final decision revoking parole or probation, there must be an opportunity for a hearing at which a final evaluation of any contested facts is made. At this hearing the defendant must have an opportunity to be heard and to show that he did not violate the conditions or that, if he did, the circumstances do not warrant revocation. After stating that it did not intend to write a code of procedures for the states, the court in Morrissey set forth the minimum requirements of due process to be afforded the defendant at this final revocation hearing (408 U. S. 489, 92 S. Ct. 2604, 33 L. ed. 2d 499):

"* * * They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."

In this case, defendant's first claim relating to the procedures used is that he was not afforded a preliminary hearing. As indicated, the purpose of a preliminary revocation hearing is

to give the defendant a reasonably prompt hearing to determine whether he should remain in custody pending the actual revocation hearing. In this case the court, in its original order revoking the stay, ordered defendant to appear for a revocation hearing on July 5, 1974, and provided that until the scheduled hearing defendant was to remain at liberty. There was therefore no need for a preliminary hearing before the revocation hearing on July 5 because defendant was not being held in custody. In re Meidinger, 168 Mont. 7, 539 P. 2d 1185 (1975). The question then becomes whether he was deprived of his rights or prejudiced in any way by the failure to have a separate hearing prior to the rescheduled hearing held on July 26, 1974, which was 1 week after he was arrested for contempt for failure to appear at the original hearing. Since there was no need for a separate preliminary hearing if the actual revocation hearing is to be held as early as the preliminary hearing would be held, the revocation hearing was all that was necessary here. The revocation hearing was held 1 week after defendant was arrested, and it is arguable that a preliminary hearing would not have been held earlier than that. The only justification for requiring a preliminary hearing in a case such as this is that the defendant should not have to spend a considerable period of time in jail awaiting a revocation hearing. Here, the actual revocation hearing was held so soon after defendant's arrest that the failure to hold a preliminary hearing should not be considered violative of due process, especially where the issue would never have arisen if defendant had appeared at the originally scheduled hearing.

Defendant's second due process claim relating to the procedures used is that he did not receive written notice of the alleged violations of probation. Defendant did not testify at the postconviction hearing that he had not received written notice. Rather, the claim was made by his attorney and based on the fact that the record did not contain a copy of the notice. Defendant's probation officer testified that he had prepared a written notice of violations and gone over it with defendant and had defendant

sign four copies of it, and that the copies were then distributed to the court and attorneys. The file on appeal does not contain a copy of the notice. An examination of the revocation hearing transcript reveals that defendant and his attorney were fully aware of the charged violations and at no time raised the claim of lack of notice. In view of these facts, we hold that a reversal is not warranted on this ground.

Thirdly, defendant contends that the way the hearing was conducted violated due process in that he was required to refute charges before any evidence had been introduced to support the charges and in that hearsay evidence was used to support the charges.

It is true that defendant testified first and that this is not the recommended procedure,[3] but there is nothing to indicate that defendant was required to testify first or that he objected to the procedure. Further, defendant was given an opportunity to testify after the state's witness testified and on the advice of counsel refused the opportunity, although his counsel stated that defendant denied some of the witness' testimony.

It is also true that some hearsay evidence was admitted. However, defendant did not object to this evidence at the revocation hearing and therefore should be held to have waived any right to later challenge admissibility. See, Thomas v. State Board of Parole, 220 N. W. 2d 874 (Iowa, 1974).

Defendant's final claim of procedural error is that the trial court failed to prepare a written statement of findings and reasons for its decision. This argument is without merit because the trial court stated its findings and reasons on the record, and these were reduced to writing as part of the transcript and are sufficient to permit review. See, State ex rel. Kaus v. McManus, 306 Minn. 487, 238 N. W. 2d 597 (1976).

In addition to arguing a denial of due process, defendant contends that the trial court abused its discretion in revoking proba-

---

[3] See, A. B. A. Standards for Criminal Justice, Standards Relating to Probation (Approved Draft, 1970) § 5.4(a)(iii).

tion. The trial court based its decision on defendant's intentional disobedience of several conditions of his probation. On this record, we cannot say that the postconviction court abused its discretion.

3. Defendant's remaining claim is that defense counsel did not provide effective representation. We find no merit to this claim.

Affirmed.