STATE of North Dakota, Plaintiff and Appellee,

v.

Edward G. ENNIS, Defendant and Appellant.

Cr. Nos. 900151–900154.

Supreme Court of North Dakota.

Dec. 17, 1990.

Peter H. Furuseth (argued), States Atty., Williston, for plaintiff and appellee.

Anseth & Zander, Williston, for defendant and appellant; argued by Janet Holter Zander.

MESCHKE, Justice.

Edward Gordon Ennis appealed from an order denying his motion for correction of the sentence imposed after his probation was revoked. We affirm.

In August 1982, Ennis was convicted of five Class B felonies for delivery of controlled substances, and was sentenced concurrently to seven years in the state penitentiary and fined $1,000 on each count. Four years of the sentence were suspended upon conditions, including that Ennis report regularly to his probation officer, that he not leave this state without advance written approval of the probation officer, and that he pay the fines "as rapidly as

income permits, but not less than 10 percent of monthly gross income."

On appeal, four of the five felonies were affirmed. *State v. Ennis*, 334 N.W.2d 827 (N.D.1983). Ennis was finally imprisoned on March 23, 1984. Nearly twelve months later he was released from prison on parole. Ennis was permitted by his probation officer to move to Montana to be supervised by a Montana probation officer under the interstate compact. *See* NDCC 12–56. However, Ennis left Montana for Arizona, and then he asked Arizona to allow him to move to California before the transfer to Arizona was completed. After that, his probation officer lost track of him. Ennis made no payments on his fines.

Eventually, Ennis was located at Olympia, Washington, and was extradited to North Dakota to face probation revocation. Ennis was charged with three probation violations, that he failed to make any payments on his fines, that he failed to get advance written approval before leaving for another state, and that he failed to report to his probation officer while his whereabouts were unknown. After an evidentiary hearing in January 1990, the trial court revoked his probation and sentenced him to five years and nine months in the penitentiary, with credit for 70 days served during extradition.

Ennis appealed, raising two main questions:

1. Does the increased length of the sentence violate his constitutional rights?

2. Does the trial court's failure to give written reasons for the sentence violate his rights?

## INCREASED PUNISHMENT

■ Ennis claims that his imprisonment for five years and nine months after revo-

cation of probation increased his punishment and contravened his Fifth Amendment rights of due process and against double jeopardy. He argues that, after completion of his initial imprisonment and parole, both the prison and parole times have been served and are no longer available for sentencing upon revocation of probation. Ennis argues that the maximum imprisonment constitutionally permissible is the four years suspended for probation.

Ennis leans on *Ex Parte Lange*, 85 U.S., 18 Wall. 163, 21 L.Ed. 872 (1873), for support that a sentence cannot be increased after the defendant has begun to serve it. In *Lange*, the trial court erroneously imposed both fine and imprisonment although the statute only authorized one or the other of the two punishments. Lange paid the fine and served five days in prison. The trial court then resentenced him to a year in prison. The United States Supreme Court granted habeas corpus and released Lange.

The Supreme Court recently explained *Lange*. "This punishment would obviously have exceeded that authorized by the legislature. *Lange* therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature ... and not for the broader rule suggested by its dictum." *Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 2526, 105 L.Ed.2d 322 (1989) (citation omitted). Because Ennis's sentence is authorized by law, *Lange* does not extricate Ennis.

The statutes authorize Ennis's resentence. As it read in 1982 when Ennis was first sentenced, NDCC 12.1–32–07(4)[1], says that, when probation is revoked, the court may continue probation or "may impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the

1. NDCC 12.1–32–07(4), enacted in 1973, said: The court may, upon notice to the probationer, modify or enlarge the conditions of a sentence to probation at any time prior to the expiration or termination of the period for which the sentence remains conditional. If the defendant violates a condition at any time prior to the expiration or termination of the period, the court may continue him on the

existing sentence, with or without modifying or enlarging the conditions, or if such continuation, modification, or enlargement is not appropriate, may impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing. This subsection was amended slightly in 1989 and is now codified at NDCC 12.1–32–07(5).

time of initial sentencing." Ennis was convicted of four Class B felonies, each with a maximum penalty of ten years imprisonment, a ten thousand dollar fine, or both. NDCC 12.1–32–01(3). Initially, Ennis could have been sentenced to at least ten years on concurrent sentences. After credit for the year that Ennis was imprisoned, NDCC 12.1–32–07(4) made available at least nine years of imprisonment for Ennis when his probation was revoked. *See State v. Gefroh*, 458 N.W.2d 479 (N.D.1990) and *State v. Jones*, 418 N.W.2d 782 (N.D.1988). Ennis's resentence was within the range authorized by law.

■ Nonetheless, Ennis argues that his parole time, after release from imprisonment, was not available for resentencing. In *State v. Vavrosky*, 442 N.W.2d 433 (N.D.1989), we held that time on probation is not "time spent in custody" within the meaning of NDCC 12.1–32–02, so that a defendant whose probation is revoked is not entitled to credit for the time that he has already spent on probation. Time on parole, too, is not "time spent in custody" within the meaning of NDCC 12.1–32–02 because time on parole is no different in kind than time on probation. Both are conditional releases, not custodial. Ennis's resentence of five years and nine months is no greater than the initial sentence of seven years, even after crediting all time spent in custody and prison.

Ennis was resentenced to serve that part of his original sentence that he had not spent in the penitentiary or in custody. That sentence was not greater than the sentence originally imposed. Ennis's resentence was available to the court and was authorized by law. His punishment was not unlawfully increased.[2]

### WRITTEN REASONS

Ennis complains that the trial court did not explain in writing the reasons for his resentence. Ennis stresses the statutory dictate that "[a]ll sentences imposed must be accompanied by a written statement by the court setting forth the reasons for imposing the particular sentence. The statement must become part of the record of the case." NDCC 12.1–32–02(6). Ennis argues that, for probation revocation, a written explanation is also an expectation of the constitutional standard of due process.

Traditionally, there has been no "requirement that the judge particularize either the factual information or the criteria upon which he relied in determining the sentence, though the giving of such explanations is often said to be a desirable practice." 3 LaFave and Israel, Criminal Procedure § 25.2(d), at 129 (1984). *See also* Campbell, Law of Sentencing § 98 (1978). In most states, a sentencing judge is not expected to supply "a coherent and rational judgment when he informs the defendant

**2.** The Double Jeopardy clause of the Fifth Amendment to the United States Constitution says, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." This clause protects criminal defendants from multiple trials and multiple punishments for the same offense.

The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. [The legislature] has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause. Thus, there is no double jeopardy protection against revocation of probation and the imposition of imprisonment.

*United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980) (An act

authorizing the prosecution to appeal a sentence imposed upon a convicted dangerous special offender did not violate either the guarantee against multiple punishment or the guarantee against multiple trials inherent in the Double Jeopardy Clause). *See also Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (Separate consecutive sentences for felony-murder and underlying felony that violate double jeopardy can be remedied by vacating completed felony sentence and crediting time served on felony-murder sentence); *State v. Olson*, 379 N.W.2d 801 (N.D.1986) (Revocation of probation does not have the effect of increasing the term of imprisonment beyond the punishment authorized by law). A sentence within the range authorized by the legislature, upon revocation of probation, does not increase a "final" sentence or impose multiple punishments for the same offense.

of his fate." *Id.* at 128, quoting Frankel, Criminal Sentences at 39 (1972). North Dakota has generally followed this tradition.

■ A trial judge is ordinarily allowed the widest range of discretion in fixing a criminal sentence. *State v. Wells,* 265 N.W.2d 239 (N.D.1978). On appeal of a claim that a sentence is excessive or incorrect, this court has no power to review the discretion of a sentencing court in fixing a term of imprisonment within the range authorized by statute. *State v. Joern,* 249 N.W.2d 921, 923 (N.D.1977); *State v. Holte,* 87 N.W.2d 47, 50 (N.D.1957). Appellate review of a criminal sentence is confined to determining whether the judge acted within the limits prescribed by statute, or substantially relied on an impermissible factor. *State v. Cummings,* 386 N.W.2d 468 (N.D.1986); *State v. Kaufman,* 310 N.W.2d 709, 714 (N.D.1981); *State v. Ber-*

*ger,* 285 N.W.2d 533 (N.D.1979); *State v. Rudolph,* 260 N.W.2d 13 (N.D.1977). Our appellate review of a criminal sentence is very limited.[3]

■ We have noted several times that the effect of noncompliance with this recent statutory direction for an explained sentence remains undecided. *State v. Orr,* 375 N.W.2d 171 (N.D.1985); *City of Riverside v. Smuda,* 339 N.W.2d 768 (N.D.1983). Ennis's argument in this case positions our attention on the purpose of this statutory direction for a written statement of reasons for a sentence.

We conclude that only the traditional, limited appellate review of a trial court's criminal sentence is still contemplated. In large part, our conclusion rests on the legislative context and history of NDCC 12.1–32–02(6).[4] We discern no legislative intention to authorize general appellate review of the exercise of discretion by the sentenc-

---

3. In other jurisdictions, judges are being increasingly expected to explain their sentencing decisions, usually to implement a presumptive sentencing plan. For illustrations, *see People v. Padilla,* 91 Ill.App.3d 799, 47 Ill.Dec. 287, 415 N.E.2d 12, 14 (1980) (Statute "requires the sentencing court to specify on the record what evidence or reason it relies upon in arriving at a sentencing determination"); *State v. Pierce,* 287 N.W.2d 570, 575 (Iowa 1980) (Statute requires trial court to state "on the record its reasons for the sentences imposed"); *State v. Stumpf,* 187 Mont. 225, 609 P.2d 298, 299 (1980) ("We see no reason why a defendant sentenced to prison is not also entitled to know precisely why the sentencing judge chose the particular sentence involved"). *See also Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) holding the new Federal sentencing process constitutional. This Federal innovation (Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1837 (1984)) creates a Sentencing Commission to proclaim guidelines for sentencing, and makes the guidelines binding on the courts. This act also requires a sentencing court to state its reasons for the sentence and to give "the specific reason" for imposing a sentence different from the guideline. 18 U.S.C. § 3553(c). Appellate review of the sentence is also explicitly authorized. 18 U.S.C. § 3742. *See Mistretta,* 109 S.Ct. at 652. 3 LaFave and Israel, at 129, tells us that, in these jurisdictions, the failure of a judge to explain a sentence will often bring about an appellate vacation of the sentence and a remand for resentencing.

4. We have not located a specific model for NDCC 12.1–32–02(6). This section came into the North Dakota Century Code with the new criminal code enacted in 1973. This new code was largely derived from the Proposed New Federal Criminal Code recommended by the U.S. National Commission on Reform of Federal Criminal Laws in 1971, although that Code was never enacted by the United States Congress. *See State v. Trieb,* 315 N.W.2d 649, 657 n. 9 (N.D.1982); *State v. Bourbeau,* 250 N.W.2d 259 (N.D.1977). The Proposed New Federal Code did not contain a general provision like NDCC 12.1–32–02(6). But, it did contain a number of specific requirements that a sentencing court "set forth in detail the reasons for its action" for certain sentences. *See* proposed § 3003(3) on Persistent Misdemeanants; proposed § 3005(2) on Resentences "whenever a more severe sentence is imposed on resentencing" (noting in the Comment that "[t]his section follows *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which permits the imposition of a higher sentence on reconviction subsequent to a reversal of conviction"); proposed § 3105 on Unconditional Discharge; proposed § 3202 on Upper–Range Imprisonment for Dangerous Felons; and proposed § 3204(5) on Consecutive Terms of Imprisonment. The U.S. National Commission on Reform of Federal Criminal Laws, A Proposed New Federal Criminal Code (1971). Instead of these separate, specific directions, the North Dakota study committee apparently developed a single, general direction.

ing court in fixing a criminal sentence.[5] The direction that a judge make the reasons for a sentence a part of the record would have some usefulness in assisting the board of pardons or the parole board to determine whether to shorten or commute a sentence, or to release a prisoner on parole. *See* NDCC 12–55–30 and 12–59–05. Written reasons would also assure that the sentencing judge has in fact carefully considered and weighed all of the relevant factors where a person's liberty is at stake. *Cf. State v. Klem*, 438 N.W.2d 798, 801 (N.D.1989) (One of the reasons for written findings is to evidence that the trial court has considered and weighed competing interests and to encourage careful consideration). However, this statutory direction for written reasons by a sentencing judge does not authorize general appellate review of a sentencing judge's discretion.

■ Ennis begins his argument seeking appellate review of his sentence by urging that the trial court failed to make written findings that his actions violated conditions of his probation. In effect, Ennis seems to

challenge revocation of his probation, although he did not appeal from that order. Rather, he appealed from a later order denying correction of his sentence.[6] Ennis's argument seems to be that sending him back to prison was unlawful for lack of explicit findings.

According to the testimony of his probation officer, Ennis had permission to leave North Dakota for Montana, but later relocated to another state without permission. Eventually Ennis stopped reporting to his probation officer altogether. The probation officer testified that Ennis had made no payments on his fines even though he had been employed, and that Ennis stated that he did not intend to pay his fines. Although Ennis's attorney cross-examined this witness, Ennis chose not to testify at the hearing and offered no direct evidence to refute the probation officer. Not surprisingly, the trial court deemed this uncontroverted evidence sufficient to revoke probation and to return Ennis to prison.

This procedure followed that set out in NDRCrimP 32(f)(2) for revoking proba-

---

5. One bit of legislative history of the revised criminal code suggests this conclusion.

> The Committee discussed Subsection 6 of SECTION 7A which requires the trial judge to accompany each sentence imposed with a written statement of the reasons for imposing that sentence. Mr. Travis said there was a possibility that this provision would unduly hamper a trial judge in his sentencing decisions. He stated that some sentences are "gut reactions" on the part of the trial judge and cannot be justified in writing. Mr. Kraft stated that the provisions of Subsection 6 of SECTION 7A would be valuable should the concept of appellate review of sentences be recommended by the Committee.

North Dakota Legislative Council, Minutes of the Committee on Judiciary "B," at 15 (January 24–25, 1972). No explicit concept of appellate review of sentences was recommended by the Committee.

Nothing in either the Committee recommendations or the final enactment of the revised criminal code mandated general appellate review of sentences. No regimen of presumptive sentencing guidelines was enacted. Rather, the legislature enumerated fourteen factors to "be accorded weight in making determinations regarding the desirability of sentencing an offender to imprisonment." NDCC 12.1–32–04. The legislature, however, stipulated that these

factors did not "control[ ] the discretion of the court" and did not "require explicit reference to these factors … by the court at sentencing." *Id.* This is additional evidence that the direction for written reasons was not intended to authorize general appellate review of every criminal sentence.

Later legislative mulling over the same subject tends to point to the same conclusion. In 1979, House Bill 1052, recommended by an interim legislative committee, would have allowed a person convicted of a felony or misdemeanor to have the length of a sentence reviewed by the Supreme Court. This bill would have authorized the Supreme Court to review the sentence, to affirm it, to substitute any sentence (other than probation or conditional release), or to remand for further proceedings or resentencing. H.B. 1052 was defeated. *See* 1979 S.J. 902. While legislative inaction has extremely limited usefulness in identifying legislative intent (*see Coles v. Glenburn Public School District No. 26*, 436 N.W.2d 262, 264 n. 2 (N.D.1989); 2A Sutherland Stat. Construction § 49.10 (4th ed. 1984)), this fragment of later legislative history jibes with our conclusion.

6. An order denying correction of a sentence claimed to be illegal is appealable under NDCC 29–28–06(5). *State v. Nace*, 371 N.W.2d 129 (N.D.1985).

tion.[7] *See State v. Miller*, 418 N.W.2d 614 (N.D.1988). The trial court obviously concluded that Ennis's violations of probation were sufficiently serious to revoke his probation. The proceedings were recorded, as the rule requires, and were later transcribed for this appeal.

In North Dakota, in a criminal case tried without a jury, a trial court usually need make only a general finding of guilty or not guilty. NDRCrimP 23(d). *Compare* NDRCrimP 12(e) ("If factual issues are involved in determining a motion, the court shall state its essential findings on the record"). However, something more than a general finding is constitutionally required to revoke probation and there are some limitations that apply to any sentence. *See State v. Cummings*, 386 N.W.2d 468 (N.D.1986); *State v. Hass*, 268 N.W.2d 456 (N.D.1978). Ennis argues that these considerations apply here.

The U.S. Supreme Court outlined procedural requirements of the Constitution for revocation of parole or probation in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The Supreme Court reaffirmed those due process requirements in *Black v. Romano*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

> The probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; *and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.*

*Id.* 105 S.Ct. at 2258 (citation omitted and emphasis added). In *Black*, the Supreme

Court elaborated on the reasons for the requirement of a written statement of the evidence and reasons for revoking probation:

> The procedures already afforded by *Gagnon* and *Morrissey* protect the defendant against revocation of probation in a constitutionally unfair manner.... The written statement required by *Gagnon* and *Morrissey* helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.

*Id.* 105 S.Ct. at 2259 (citation omitted). Thus, a record statement of the evidence relied on and the reasons for doing so is constitutionally called for in revoking probation.

In this case, the trial court's written Order Revoking Probation contains no explicit statement of the evidence relied on or of the reasons for revoking probation. However, on the record at the end of the hearing, the court explained, "I'm not going to turn him loose, I'll tell you that, because he's defied the Court and refused to pay his fine and costs and ... been on the run, more or less...."

While terse, this explanation effectively found Ennis guilty of the charged violations of the conditions of his probation, that he refused to pay on his fines, that he failed to get approval before moving to another state, and that he failed to properly report to his probation officer. Following these findings, the trial court entered the written Order Revoking Probation. As in *Black*, "[t]he memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied

---

7. NDRCrimP 32(f)(2) spells out the trial court procedure for considering revocation of probation:

(2) *Hearing.* The hearing shall be in open court with:
(i) The probationer present,
(ii) A prior written notice of the alleged violation given to the probationer, and
(iii) Representation by retained or appointed counsel unless waived.

If the violation is contested, the prosecution shall establish the violation by a preponderance of the evidence. Upon the hearing, the court, subject to limitations imposed by law, may revoke an order suspending a sentence or an order suspending the imposition of sentence, or continue probation on the same or different conditions, as the circumstances warrant. A record of the proceedings must be made in such manner that it can be transcribed as needed.

upon and the reason for the decision to revoke probation." 105 S.Ct. at 2260. *See also Pearson v. State,* 308 Minn. 287, 241 N.W.2d 490 (1976) (Requirement that written statement be made by the factfinder is satisfied where trial court states its findings and reasons on record which is transcribed to permit review). Thus, the rudiments for revoking probation were fulfilled in this case.

■ Ennis goes on to argue that there was "no statement setting forth the reasons for imposing the term of incarceration ordered." Citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), Ennis insists that "there were no events subsequent to the first imposition of sentence which warrant an increased penalty and the District Court did not affirmatively state any grounds for increasing the sentence," and that the trial court did not explain why it rejected alternatives to imprisoning him again.

Ordinarily, where a defendant whose probation was revoked "had a full opportunity to present mitigating factors to the sentencing judge and to propose alternatives to incarceration," he has been afforded the constitutional process due "even though the state judge did not explain on the record his consideration and rejection of alternatives to incarceration." *Black v. Romano,* 105 S.Ct. at 2260. Yet, as *Black* recognizes, 105 S.Ct. at 2259, some circumstances call for more explanation when probation is revoked. Unless one of those additional circumstances is present, Ennis received all the consideration and explanation that the Constitution commands and that the law requires for revoking probation.

One circumstance that sometimes needs further explanation is where the judge imposes a more severe sentence when resentencing. In such a case, the reasons for the increase may need elaboration to guard against a vindictive increase in the punishment. *See North Carolina v. Pearce,* 89 S.Ct. at 2081; *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). But, as we have seen, the trial court did not increase Ennis's sentence when his probation was revoked. The trial court simply resentenced Ennis to the time remaining that Ennis had not spent in custody or in prison on his first sentence. Since Ennis's punishment was not increased, the trial court did not need to make additional explanations for this reason. Presumably, in imposing the original sentence, now reinstated, the trial court explained its reasons. No useful purpose would be served by requiring the sentencing court to reiterate its reasons when revoking that probation.

■ Another circumstance sometimes requires more explanation of a sentence. Where payment of a fine or restitution is a condition of probation, and "the probationer has made all reasonable efforts to pay ... yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 2070–71, 76 L.Ed.2d 221 (1983) (footnote omitted). "[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* 103 S.Ct. at 2073. Framing his argument around this constitutional foundation, Ennis insists that "[i]f the incarceration was based primarily upon non-payment of costs and fines the sentence is unduly excessive and is illegal under Section 12.1–32–05(3)[ ] of the North Dakota Century Code." [8] If a

---

8. NDCC 12.1–32–05 says:
*Imposition of fine—Response to nonpayment.*
1. The court, in making a determination of the propriety of imposing a sentence to pay a fine, shall consider the following factors:
   a. The ability of the defendant to pay without undue hardship.
   b. Whether the defendant, other than a defendant organization, gained money or property as a result of commission.

c. Whether the sentence to pay a fine will interfere with the defendant's capacity to make restitution.
d. Whether a sentence to pay a fine will serve a valid rehabilitative purpose.
2. The court may allow the defendant to pay any fine imposed in installments. When a defendant is sentenced to pay a fine, the court shall not impose at the same time an alterna-

default in payment of a fine for a felony is not excusable, NDCC 12.1–32–05(3)(b) limits the resulting imprisonment to six months. Since the trial court said, in revoking Ennis's probation, that he "defied the Court and refused to pay his fine and costs," Ennis argues that any prison sentence over six months was excessive and illegal.

If Ennis "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence [him] to imprisonment *within the authorized range of its sentencing authority*." *Bearden,* 103 S.Ct. at 2073 (our emphasis). The problem here is that, in North Dakota, the authorized sentence for nonpayment of a fine cannot exceed six months imprisonment. NDCC 12.1–32–05(3)(b). *See also North Dakota Criminal Code Hornbook,* 50 N.D.L.Rev. 639, 650 (1973–1974) ("In lieu of alternative sentences the New Code allows imprisonment for a short period provided the defendant fails to establish his default as excusable. The provisions of the New Code relating to fines are substantially similar to those in the Proposed Federal Code.") (footnotes omitted). Ennis was resentenced to over five years. If that resentence was based solely on nonpayment of the fines, the sentence would exceed the authorized range and would be illegal.

On the other hand, Ennis's failures to get permission for his moves and to report were reasons which authorized revocation of probation and imposition of the original sentence. These were the significant factors that the trial court considered in sentencing. Most of the revocation hearing focused on Ennis's failure to keep in contact with his probation officer. Because there is nothing to indicate that the trial court relied solely on an impermissible

factor, and there were proper factors which the court obviously considered in resentencing, we decline to vacate Ennis's sentence. *State v. Kaufman,* 310 N.W.2d 709, 714 (N.D.1981). Accordingly, we affirm.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.

---

tive sentence to be served in the event that the fine is not paid.

3. If the defendant does not pay the fine, or make any required partial payment, the court, upon motion of the prosecuting attorney or on its own motion, may issue an order to show cause why the defendant should not be imprisoned for nonpayment. Unless the defendant shows that his default is excusable, the court may sentence him to the following periods of imprisonment for failure to pay a fine:

a. If the defendant was convicted of a misdemeanor, to a period not to exceed thirty days.

b. If the defendant was convicted of a felony, to a period not to exceed six months.