STATE of North Dakota, Plaintiff
and Appellee,

v.

Glenn A. GATES, Defendant
and Appellant.

Cr. No. 940388.

Supreme Court of North Dakota.

Nov. 2, 1995.

Marvin K. Madsen, State's Attorney, Mohall, for plaintiff and appellee.

Thomas K. Schoppert, Schoppert Law Firm, Minot, for defendant and appellant.

MESCHKE, Justice.

Glenn A. Gates appealed from an order revoking his probation for failure to pay any restitution, and sentencing him to imprisonment and further probation conditioned on restitution. We affirm the trial court's findings revoking probation and imposing imprisonment, but remand with directions to make more specific the restitution condition for continuing probation.

Gates was in a partnership to buy, import, export, and sell grain. In April 1988, Gates received checks payable to the partnership for $15,000 and $10,000. Gates converted the funds to his own use without the prior approval required by the partnership agreement.

On March 27, 1991, Gates was charged with theft of over $10,000, a class B felony, and theft of over $500, a class C felony. On January 23, 1992, Gates pled guilty to the class C felony in exchange for dismissal of the class B felony, a one-year suspended jail sentence, and probation with permission to leave the state for work activities. If he successfully completed probation, the felony was to be reduced to a misdemeanor. Probation was conditioned on paying restitution, but if it was not paid by the tenth month

after sentencing, Gates agreed his probation would be revoked, and he would serve the one year in jail.

The prosecutor reminded the trial judge to "just be sure that Mr. Gates is acknowledging that he does have the funds to make restitution up to this particular dollar amount." Gates's attorney answered, "He is acknowledging today that he has the funds available...." The trial court asked, "Now, Mr. Gates, have you made arrangements and thought about this so that you can complete this no matter what the amount is?" and Gates answered, "Yes, I have." Gates did not state his expected source of funds for the restitution.

The trial court instructed Gates, "You're going to have some sort of schedule with the probation officer. They don't want you to wait until the very end and all of a sudden you'll have 19,000 or some amount but that's kind of between you and the probation officer." The court also warned Gates that nonpayment of the restitution "could be grounds to either revoke your suspended sentence or continue to extend the sentence to do something so it was recovered...."

At the restitution hearing on April 8, 1992, the possibility arose that Gates might have transferred some of the money for partnership purposes, reducing his obligation. Only Gates's attorney was present at this hearing. The trial court postponed action to consider appointing a master if disagreement remained after efforts to trace the money were completed. At a later hearing on July 7, 1992, only his attorney appeared again, and conceded that there had been no partnership transfers by Gates for credit on restitution. The court ordered Gates to pay $19,186 restitution by the tenth month of his supervised probation, November 23, 1992, but again did not inquire into his ability to pay.

On August 28, 1992, the trial court scheduled a hearing to revoke Gates's probation for his failure to report to his probation officer since March 9, 1992. At the revocation hearing on October 26, 1992, Gates's parole officer testified that Gates was supposed to report monthly and that, "He reported initially and then he missed a month

and then he reported again by telephone and in person in March. And that was the last contact I had with him." Gates had been assigned a new parole officer on June 1, 1992, who testified he had been unable to locate Gates. Gates testified that he left in March or April of 1992 for custom combining work out of state with plans to return in August. He claimed he did not know he was to report monthly, but thought "just when I come back to report."

The trial court found Gates violated his probation for failing to report. The court sentenced Gates to one year imprisonment, with eleven months suspended for two years and, since Gates had not paid any restitution yet, restructured the restitution to be paid by the end of the twentieth month of supervised probation, or before June 26, 1994. Once again, the trial court did not inquire into Gates's ability to pay restitution, and there was no discussion about his source of funds. Two years later on October 31, 1994, the trial court scheduled a hearing to revoke Gates's probation for failing to pay restitution. At the hearing on November 30, 1994, Gates testified that in 1993 he earned near $6,000, and in 1994 near $6,500, all from custom combining. After harvest in 1993, Gates built a combine trailer and did repair work for his employer to earn another $3,500. He testified he had no assets and no means of paying restitution.

At this hearing, Gates described, for the first time, his pending lawsuit against the federal government, and his hope to win that lawsuit for funds to make restitution. According to Gates, he began the lawsuit after the federal government had improperly foreclosed a mortgage on his farm, before his January 1992 guilty plea. Gates had not previously told the trial court that he was counting on the outcome of the lawsuit, but he had simply assumed he would have funds from it for his assurances to the court. Gates testified that he "mentioned about getting my land back" to the probation officer, and that the probation officer had "asked if I could afford to make payments and I said I couldn't."

Gates was also behind in a $400 monthly child support obligation to his former wife.

The trial court recognized, "if someone was meeting some other court ordered obligation[,] it goes to the ability to pay and how someone is attempting to meet obligations." In October 1992, Gates owed $17,260 in support arrearages. Since then, he had paid only $1,000 in November 1992, $200 at a later date, and $40 in March 1994.

Asked why he did not seek better employment during the off-season, Gates testified, "I thought that um this deal with my land would come about and I would be able to pay up all this stuff." He also testified that he went to Job Service "[a]bout three or four" times for job referrals, but did not follow up on them.

Gates's living expenses were minimal, too. About rent, food, and utility expenses, he said, "I am living with my mother now. She supplies that. In return I build stuff for her in the basement." Gates did not explain how he spent his earnings.

The trial court found Gates violated his probation "by willfully failing to make restitution in the amount of $19,186.00 for any part thereof." The court ruled, "you haven't paid a single thing, a single month when you have had some ability to pay. Not only the ability to pay but I really do find that you have maintained an under employment status intentionally." The court sentenced Gates to one year and a day in prison, with five months and one day suspended for five years, and reimposed restitution as a condition of probation. The court also directed Gates to find more productive employment. Gates appeals.

Gates argues, "A sentence cannot be imposed for violation of a term of probation based on nonpayment of restitution when a future chose of action does not materialize" and, "The Court may not revoke probation when the defendant's ability to make restitution has not been determined." Specifically, Gates claims his "ability to pay was not properly ascertained by the Court" when his only means of payment was a hopeful result in pending litigation. Thus, he claims, the court's inquiry into his ability to pay "was based upon a future chose of action that may or may not have materialized" and, "If the

Court has no firm basis of a defendant's ability to pay restitution, the Court cannot subsequently play 'gotcha!' and sentence a term of imprisonment for willful failure to pay." Gates protests he "was punished for his poverty and financial situation," "that [he] did not make restitution is not in itself a willful refusal to do so," and he "did not have the means to make restitution because of circumstances out of [his] control, in a case before the Federal Claims Court that is yet unresolved." We disagree.

■■■ We review a probation revocation in two stages. *State v. Monson*, 518 N.W.2d 171, 173 (N.D.1994). First, under the clearly erroneous standard, we review the trial court's factual finding on the violation of probation. *Id.* A finding of fact is clearly erroneous if, although there is some evidence to support the finding, we are convinced, on the entire record, a definite mistake has been made. *State v. Toepke*, 485 N.W.2d 792, 794 (N.D.1992). Second, we review the trial court's decision to revoke probation under the abuse-of-discretion standard. *Monson*, 518 N.W.2d at 173. Our review of the sentence imposed after revoking probation is very limited. We explained in *State v. Ennis*, 464 N.W.2d 378, 382 (N.D.1990), that we are "confined to determining whether the judge acted within the limits prescribed by statute, or substantially relied on an impermissible factor."

■■ The trial court's findings here, though scattered throughout the transcript and order, are ample for review. *Id.* at 384–85. The court was in a better position than we are to observe Gates' demeanor and to gauge his credibility. *Toepke*, 485 N.W.2d at 795. We will not substitute our judgment for the trial court's. From the start, Gates assured the trial court that he would have funds to pay the restitution without fully disclosing that he was counting on the outcome of a pending lawsuit. The court accepted Gates's representations at sentencing in 1992. By October 1994, though, the court realized Gates had made no effort to pay and did not intend to do so unless his ongoing lawsuit succeeded. The trial court found that Gates "has violated condition no. 15 as alleged in the petition by failing and it is by willful

failing to make restitution in the amount of $19,186.00 for any part thereof." The trial court didn't "believe [Gates] ever felt [he] should ever have to pay this back," and found that Gates "paid nothing, absolutely nothing. . . . I didn't ever suggest that you would have it all paid off the $19,000.00, but I expected I would see that you paid something each month from October 92 until now." The trial court rebuked Gates: "You were convicted of stealing $19,000.00 and you haven't paid a penny of it back in over two years." "[T]hen we had a revocation hearing, . . . I thought you would get serious about this. I put you in jail for 30 days because of your attitude of not reporting I believe it was, as well as no restitution. So I expected something." The court said, "In fact if you would of made at least $10 a month for the last two years we wouldn't be here."

■■ In finding that Gates's child support obligation did not mitigate his failure to pay restitution, the trial court stated it "could even give you some kind of allowance if you had been paying $400 a month in child support, because that's a lot. . . . But if you had been scraping together everything you earned and making sure you met that obligation which probably started before this one. . . . Then I would say well at least your meeting some obligation. . . . My point is your not meeting that obligation either, so it's not a mitigating circumstance that I would consider."

■■ The trial court gave little weight to Gates's pending lawsuit. The court explained, "If this matter goes to trial there won't be a decision perhaps until some time after that. And of course there is probably a right to an appeal . . . but we may both be in our graves before this is finally concluded. . . . Because everybody in this room knows how litigation can go on." The court continued: "But my point is you haven't paid a single thing, a single month when you have had some ability to pay. Not only the ability to pay but I really do find that you have maintained an under employment status intentionally." Emphasizing the likelihood Gates could have found a better job, the

court explained, "I think you have the capabilities to do that with your abilities, but you haven't attempted that. I don't know how I can make you serious about the matter of making payments. I ... think even today you don't see it as a high priority."

This record shows that Gates had not made a sufficient effort to obtain gainful employment in the off-season from combining, had not made any payments at all toward restitution, and had made only small payments toward child support. Because Gates had minimal monthly expenses while earning over $15,000 since restitution was ordered, we are not convinced a mistake was made. We affirm the finding that Gates violated the terms of his probation by failing to make any restitution payments.

In the second stage of our inquiry, we consider whether the trial court abused its discretion in revoking Gates's probation and resentencing him. A court has "the widest range of discretion in fixing a criminal sentence," *Ennis,* 464 N.W.2d at 382, and our review on appeal is limited to "whether the judge acted within the limits prescribed by statute, or substantially relied on an impermissible factor." *Id.*

Gates argues: "A sentence cannot be imposed for violation of a term of probation based on nonpayment of restitution when a future chose of action does not materialize." He claims he "was punished for his poverty and financial situation," an impermissible factor. We disagree.

■ We have explained before: Where payment of a fine or restitution is a condition of probation, and "the probationer has made all reasonable efforts to pay ... yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available."

*Ennis,* 464 N.W.2d at 385 (quoting *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)). However:

If [the defendant] "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence [him] to imprisonment *within the authorized range of its sentencing authority.*"

*Id.* at 386 (quoting *Bearden* ) (emphasis in original). We held in *Toepke,* 485 N.W.2d at 795, to "make the appropriate personal impact" on a probationer, a trial court may revoke probation and require imprisonment when the court "believe[s] that he had not taken his probation as seriously as he should have."

The trial court concluded Gates did not take his earlier sentence seriously enough. As we said in *Ennis,* 464 N.W.2d at 386, "there is nothing [here] to indicate that the trial court relied solely on an impermissible factor, and there were proper factors which the court obviously considered in resentencing." The court did not abuse its discretion by revoking Gates's probation and resentencing him.

■ " '[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.' " *Id.* at 385 (quoting *Bearden* ). While the trial court did that here, it had not explored in prior hearings how Gates planned to pay. By imposing the same lump-sum-repayment condition as before, the trial court may be perpetuating the same problem. On remand, we direct the court to specify the amounts that Gates must pay regularly.

■ The statute governing conditions of probation authorizes a trial court, "upon notice to the probationer and with good cause, [to] modify or enlarge the conditions of probation at any time prior to the expiration or termination of the period for which the probation remains conditional." NDCC 12.1–32–07(6) (part). *See also* NDCC 12.1–32–06.1(7) ("a sentence to probation subsequently can be modified or revoked ..."). A sentencing court has continuing power to modify the conditions of probation.

On remand, the trial court should specify the minimum amount Gates should pay regularly for restitution, given his ability, expected earnings, and obligations. Of course, the court should also condition probation upon

application of Gates's net recovery in his pending lawsuit, if and when received during probation. Like other serial payments ordered by the courts, if Gates becomes unable to pay the amount specified, it would be up to him to promptly petition the court to modify the amount specified in order to forestall a later proceeding to revoke his probation for nonpayment.

We affirm the trial court's revocation of Gates's probation and its re-sentencing him, but we remand with directions that the court make more specific the regular restitution payments to be made during Gates's continued probation.

VANDE WALLE, C.J., SANDSTROM and LEVINE, JJ., and MICHAEL O. McGUIRE, District Judge, concur.

MICHAEL O. McGUIRE, District Judge, sitting in place of NEUMANN, J., disqualified.