**STATE of North Dakota, Plaintiff and Appellee,**

v.

**David THOMPSON, Defendant and Appellant.**

Criminal No. 950396.

Supreme Court of North Dakota.

May 29, 1996.

Sonja Clapp (argued), Assistant State's Attorney, Grand Forks, for plaintiff and appellee.

Nelson, Schubert, McKechnie & Madsen, P.C., Grand Forks, for defendant and appellant; argued by Brett Kalina, third year law student. Appearance by Arline F. Schubert.

MESCHKE, Justice.

David Thompson appeals from judgments revoking probation and resentencing him to the state penitentiary. We affirm.

In 1991, Thompson pled guilty to four counts of gross sexual imposition after he molested two young children. The trial court sentenced Thompson to seven years in the state penitentiary, with the final four years conditionally suspended if Thompson successfully completed the penitentiary's sexual offenders program.

To monitor his progress in the program, the trial court requested periodic reports from Thompson's counselors at the peniten-

tiary. In a February 1993 progress report, the counselors noted Thompson's upcoming release date and stated:

Mr. Thompson's gains to date have been minimal. His level of honesty and openness is questionable at best. He participates very little in the group process, and at times needs to be prompted to give feedback. He shows no victim empathy and only occasionally portrays emotions in therapy. He attempts to stay intellectual and has many of his defense mechanisms in place. . . .

Due to Mr. Thompson's minimal progress he should be considered an untreated Sex Offender at a high risk to reoffend in the community. It is our suggestion that he be ordered to continue with Sex Offender Treatment in the community or in the North Dakota State Penitentiary if his suspended portion of his sentence were revoked.

In April 1993, the trial court held a hearing to determine if it should revoke the suspended portion of Thompson's sentence due to his failure to satisfactorily complete the penitentiary's sexual offenders program. The hearing was continued so Dr. Myron Veenstra, a psychologist at the Northeast Human Service Center (NHSC), could evaluate Thompson to determine his amenability to outpatient treatment.

On June 6, 1993, after receiving Dr. Veenstra's recommendations, the trial court decided not to revoke the suspended portion of Thompson's 1991 sentence. Instead, the court placed Thompson on supervised probation and ordered him to begin outpatient treatment in the sexual offenders program at NHSC. For the initial phases of the program, Thompson was to be jailed at the Grand Forks County Correctional Center (GFCCC). Eventually, after Thompson showed sufficient progress in the treatment program, he would be released from the GFCCC. This release would be subject to the following condition of probation, among others: "Upon release from confinement, it is expected that [Thompson] abide by the agreed upon behavioral restrictions and actively pursue treatment objectives reducing the risk of reoffending."

Thompson was granted work release from the GFCCC in January 1994, and was hired by a local moving company. On August 12, 1994, the trial court released Thompson from the GFCCC, "subject to all terms and conditions of the Order of the Court dated July 6, 1993, including continuation of the outpatient treatment program with Dr. Myron Veenstra, and supervised probation under the conditions specified in" the 1991 criminal judgment. In May 1995, Thompson began work at a fast-food restaurant.

On October 16, 1995, the owner of the restaurant contacted NHSC and told one of Thompson's counselors that a fifteen-year-old employee, Alan (a pseudonym), and his parents had showed the owner a card Thompson had left on the windshield of Alan's car. The pre-printed card had Thompson's name, address and phone number on the front, and a handwritten note on the back: "If you're in town & like to do Something Call." Alan also told the owner that Thompson had hugged him and made other physical contact.

On October 17, NHSC staff met with Thompson. When asked if anything had happened at work, Thompson did not disclose leaving the card or any of the other physical contact. However, after "a great deal of prodding," Thompson finally admitted to leaving the card, hugging Alan, and other "horseplay." Later that day, NHSC terminated Thompson from its sexual offenders program due to his failure to disclose the inappropriate conduct with Alan.

On October 18, Thompson's probation officer petitioned to revoke Thompson's probation. The petition alleged that Thompson had violated conditions of his probation by being terminated from the sexual offenders program at NHSC, and for refusing a request that he sign a release allowing NHSC to conduct a follow-up investigation with Alan and his parents.

After a hearing on November 6 and 29, the trial court found:

[T]here is a violation of the terms of probation by reason of the termination of Mr. Thompson from the program at [NHSC] and that there is a further violation in the form of his grooming behavior with [Alan],

who has testified here today and the Court cannot over emphasize that. I think it's extremely significant. . . .

The trial court revoked Thompson's probation and resentenced him to ten years in the penitentiary, with credit for time served. Thompson appeals.

■ We review a trial court's factual finding that a condition of probation was violated under a clearly erroneous standard. *State v. Gates,* 540 N.W.2d 134, 137 (N.D.1995); *State v. Monson,* 518 N.W.2d 171, 173 (N.D.1994); *State v. Toepke,* 485 N.W.2d 792, 794 (N.D. 1992). "A finding of fact is clearly erroneous if, although there is some evidence to support the finding, we are convinced, on the entire record, a definite mistake has been made." *Gates,* 540 N.W.2d at 137. We are not convinced a mistake was made here.

■ Thompson argues he was improperly terminated from the sexual offenders program at NHSC, and that it was therefore clearly erroneous for the trial court to find that the improper termination violated a condition of probation. According to Thompson, NHSC had diagnosed him as a "pedophile," and "[m]edical journals and the like have described a pedophile as someone who has sexual feelings and thoughts about *prepubescent* children." Noting that Alan was an adolescent minor, rather than prepubescent, and asserting that he "was not sexually interested in" Alan, Thompson argues that the termination was improper because he reasonably believed he did not have to disclose the interactions to his counselors. We disagree.

Thompson admitted at the revocation hearing that his treatment goals required him to be careful around *all* minors:

Q. [D]id you talk about a particular age group to be more aware of or stay away from more often?

A. I did.

Q. Did they specify an age group?

A. Overall nobody under eighteen.

Q. And you knew that?

A. Yes.

Because this testimony shows that Thompson clearly knew Alan was in an age group that was at risk from his "cycle" of abuse, it was

not clear error for the trial court to reject his argument that he was improperly terminated from the program.

■ The trial court's August 1994 order releasing Thompson from the GFCCC specifically stated that "continuation of the outpatient treatment program with Dr. Myron Veenstra" was a condition of his probation. Therefore, it was not clear error for the trial court to have found that Thompson's termination from the sexual offenders program at NHSC, coupled with Dr. Veenstra's refusal to accept him back into the program, was a probation violation.

■ It was also not clear error for the court to find that Thompson had violated his probation by engaging in "grooming" conduct with Alan. Although Thompson asserts that it was clear error for the trial court to rely on Alan's testimony because it contained "many contradictions" and "was not always truthful," it is not the function of an appellate court to judge the credibility of a witness. *Toepke,* 485 N.W.2d at 795; *State v. Saavedra,* 406 N.W.2d 667, 669 (N.D.1987); *see also Gates,* 540 N.W.2d at 137. Both Thompson and Alan testified at the revocation hearing, and the trial court was in the best position to judge their credibility. The trial court apparently believed Alan's testimony, and specifically rejected Thompson's explanations for the inappropriate conduct. We will not substitute our judgment for the trial court's.

■ Thompson argues, because "less drastic restrictions . . . were appropriate," the trial court "abused its discretion in revoking his probation and resentencing him" to the penitentiary. As Thompson recognizes, "[b]ecause the decision to revoke or to continue probation is discretionary with the trial court, we review the trial court's decision to revoke under the abuse of discretion standard." *Saavedra,* 406 N.W.2d at 669; *see also Gates,* 540 N.W.2d at 137; *Monson,* 518 N.W.2d at 173. The trial court carefully explained why it believed revocation was warranted in this case:

[W]e all remember when Mr. Thompson was released, he was released by the penitentiary without having successfully com-

pleted the program there. So, the decision that the Court had to make at that time was ... whether or not Mr. Thompson should just go back to the penitentiary and serve the rest of his time. I did expect some risk in having Mr. Thompson be a part of the local program and under the supervision of Dr. Veenstra in the hopes that that program could provide the treatment that would be effective but that has not occurred.

Dr. Veenstra has testified that under the circumstances, he could not recommend further placement in the program up here. So, the chance essentially runs out.... The last thing in the world, I think, [Thompson] needs is to be set free in the community and relatively unsupervised [in] ... the untreated state that he's presently in because it would, I think, only be a disservice to himself and certainly to the public, and the Court does have and must act upon its duty to the public here, as well.

And so finding that there has been a violation of the terms of probation, the Court would terminate probation and the appropriate thing to do then would be to resentence under the law since probation has not been effective.

Based on the probation violations and Thompson's treatment history, the trial court did not abuse its discretion in determining that continued probation would be inappropriate in this case.

Thompson argues that the trial court improperly revoked his probation because it failed to construe the conditions of probation strictly in his favor. *See Morstad v. State,* 518 N.W.2d 191 (N.D.1994); *Monson,* 518 N.W.2d at 173–74; *State v. Drader,* 432 N.W.2d 553 (N.D.1988). However, we decline to address this argument because Thompson failed to present it to the trial court, and raises it for the first time on appeal. *See City of Fargo v. Hector,* 534 N.W.2d 821, 822 (N.D.1995). We have considered Thompson's remaining arguments and find them to be without merit.

We affirm the judgments revoking Thompson's probation and resentencing him to the penitentiary.

VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.