2003 ND 23

STATE of North Dakota, Plaintiff
and Appellee,

v.

Thomas J. OLSON, Defendant
and Appellant.

Nos. 20020091, 20020092.

Supreme Court of North Dakota.

Feb. 19, 2003.

Brian David Grosinger, Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for defendant and appellant.

Paul H. Myerchin (appeared), Bormann & Myerchin, LLP, Bismarck, N.D., and Grant J. Shostak, Moline, Shostak & Mehan, St. Louis, MO, for amicus curiae National Association of Criminal Defense Lawyers.

NEUMANN, Justice.

[¶ 1] Thomas J. Olson has appealed district court orders and judgment revoking his probation, striking his defense of lack of criminal responsibility, denying his motion for a continuance, and denying his request for reconsideration. We affirm.

I

[¶ 2] In November 2001, Lisa Johner secured a domestic violence protection order prohibiting Olson from following, stalking, or having any direct or indirect contact with her. On February 12, 2002, Olson pleaded guilty in Morton County District Court to three counts of violating a domestic violence protection order. Olson was sentenced to six months in jail, with all but ten days suspended for two years, with the imprisonment to be served on weekends. Olson was placed on probation for two years, subject to a number of conditions, including that he have no contact with Lisa Johner and that any violation of the protection order is a violation of probation.

[¶ 3] On February 28, 2002, the State petitioned for revocation of Olson's probation, alleging Olson "violated one or more of the conditions of probation" because he "contacted Lisa Johner on February 22,[1] 2002, a violation of the Court Order," and "any violation of the protection order is a violation of probation."

[¶ 4] Olson filed a notice of a defense of lack of criminal responsibility and moved for a continuance. The court struck the defense and denied the motion, explaining: "The crimes of which the defendant were convicted are strict liability offenses. No requirement of his conduct being willful was required and, likewise, there is no requirement of willfulness in the revocation hearing." Olson moved for reconsideration, which the court denied.

---

1. At the hearing on April 9, 2002, the Assistant State's Attorney said the alleged date should have been February 21, 2002.

[¶ 5] At the hearing on April 9, 2002, Officer Seidel of the Bismarck Police Department testified: (1) On February 21, 2002, he was dispatched to a parking lot to meet Olson, who said Lisa Johner and a friend had smoked marijuana in a car and were now in the Elbow Room; (2) He followed Johner and her companion when they left in the vehicle and stopped following them when he observed no traffic violations; (3) He saw Olson follow Johner when Johner was eastbound on Front Avenue; and (4) Olson soon reported Johner's car had just been parked at 601 South 13th Street. Seidel testified Johner requested an officer at 601 South 13th Street, her friend's parents' house, and told Seidel:

> she had a protection order against Thomas and that he had been following them for some time, so that they had stopped at the closest place that they could, which was the parents of Travis. . . . They said as they were making a phone call and as they were at this residence, they had noticed him drive by or circle approximately two or three or four times.

Seidel testified Johner showed him a copy of the protection order, which stated Olson was not to follow or stalk Johner. Officer Seidel stated he felt Olson had followed Johner "from Ninth and Front to the location she was presently at" and he then arrested Olson for violation of a protection order.

[¶ 6] Olson testified he called the police about Lisa and her friend "to get back at them and make—I was trying to be a good citizen and helping the cops to get an arrest on narcotic use," and "it appeared" he was "following Lisa, but really" he was "in the area of [his] friend Larry Larson's house." On cross-examination, Olson said he had previously been convicted of violating the protection order. Olson's attorney made an offer of proof:

> MR. McCABE: Yeah. I believe at the very least, Your Honor—I know you disagree with me—but I believe the evidence that I want to make here as an offer of proof should at least entitle my client at a minimum, just to preserve the constitutionality of the statute he was accused of violating, that under *State v. Holte* and precedence, including my case of *State v. Egan,* that at the very least he be entitled to present an affirmative defense, meaning the burden is on him. The state has no burden. The state does not even have to rebut it, that my client has committed innocent or mistaken conduct by and through his insanity, which is a lack of mental responsibility.
>
> . . . .
>
> His defense that he would like to present is that in seeing these doctors, they have diagnosed him as insane or, as the statute says, lacking the mental responsibility, which means not knowing the consequences of his conduct.

Olson's attorney argued his view of the evidence to the trial court:

> When you hear his side, it starts to make sense. It was a lot of coincidences, but he basically wanted to be a good citizen and report drug activity; and he kept continuing to call the police because as he was en route to his friend Larry's house, which he did go there—we have proof of that—it just so happens he met her again.

[¶ 7] The trial court found Olson "violated the terms of his probation" and "that his probation should be revoked." The court explained:

> I do believe, however, that he needs to have this hammered into him once again that he cannot have this kind of conduct, so the judgment of the Court is going to be that he's going to be incarcerated for a period of six months on each of the counts at the county jail. All but 20 of

the days are going to be suspended for two years.

. . . .

You cannot do this. I don't care what your mental status is. It doesn't require any thinking. It requires you not to have any contact with Ms. Johner. You are not a public citizen trying to report things to the police. That's not your job. You stay away from her. Now, I don't care what your mental status is, if you continue to bother her, you are going to spend more time in jail. Do you understand that?

Olson responded, "Yes, sir." The trial court issued orders finding Olson violated the court's order of February 12, 2002, and sentencing him to six months in jail, with all but 20 days suspended for two years, with the twenty days to be served on weekends, and credit for ten days already served. Olson appealed.

## II

■ [¶ 8] The State moved to dismiss Olson's appeal as moot because Olson "subsequently pled guilty to the facts alleged in the underlying allegations in the Petition for Revocation in the separate prosecution in" Burleigh County.[2] On March 27, 2002, the Burleigh County State's Attorney executed an Information alleging "on or about the 21st day of February, 2002, in Burleigh County . . . Olson, committed the crime of Violation of Domestic Violence Protection Order" by violating "the terms and conditions of a Domestic Violence Protection Order dated November 9, 2001." On June 3, 2002, Olson pleaded guilty to that offense. The

criminal judgment issued on June 4, 2002, sentenced Olson to the custody of the North Dakota Department of Corrections and Rehabilitation for one year. Execution of the sentence was suspended and Olson was placed on probation for two years.

■ [¶ 9] An appeal is not moot if the trial court's decision continues to have collateral consequences for the appellant. *Millang v. Hahn*, 1998 ND 152, ¶ 6, 582 N.W.2d 665. One collateral consequence of the trial court's decision is an increased risk that any future violation of a condition of his probation will result in revocation of Olson's probation. We conclude Olson's appeal has not been mooted by his later conviction of a criminal violation arising out of the same conduct as that involved in the probation revocation proceeding leading to this appeal.

## III

[¶ 10] Olson has raised the following issue on appeal:

It was reversible error when Olson was denied 1) his statutory and constitutional right to present an affirmative defense through medical doctors that he lacked the capacity to comprehend the harmful nature or consequences of his conduct, or that he unwittingly or unknowingly violated the law, or that his conduct was innocent or mistaken, or in the alternative, 2) his constitutional right to present a defense of lack of criminal responsibility due to insanity.

He contends "this case involves the application of the statutory and constitutional

---

2. "When there is a reason to believe that a probationer or parolee has committed a crime in violation of a probation or parole condition, the authorities usually have the discretion to pursue either a revocation or new criminal charges, or both." 2 Neil P. Cohen, *The Law of Probation and Parole* § 22:6 (2d ed.1999). This Court has "expressed a preference for trying a criminal charge before seeking revocation of probation for the same act." *State v. Gefroh*, 458 N.W.2d 479, 481 (N.D.1990), citing *State v. Hass*, 268 N.W.2d 456, 460 (N.D.1978).

right to present a defense to a felony violation of N.D.C.C. § 14–07.1–06."

[¶ 11] Violation of a domestic violence protection order, punishable under N.D.C.C. § 14–07.1–06, which does not specify a culpability requirement, "is a strict liability offense for which no proof of intent is required." *State v. Holte*, 2001 ND 133, ¶ 10, 631 N.W.2d 595. We have said a defendant charged with commission of a strict-liability offense may present an affirmative defense of unwitting violation. *State v. Michlitsch*, 438 N.W.2d 175, 178 (N.D.1989). In *Holte*, at ¶ 13, we recognized "[i]t is possible for a person to be convicted of the strict liability offense of violating a domestic violence protection order under N.D.C.C. § 14–07.1–06 based on innocent or mistaken conduct." Because such a construction would make the constitutional validity of N.D.C.C. § 14–07.1–06 questionable, we held "that a *Michlitsch*-type affirmative defense instruction may be given under appropriate circumstances in a prosecution for violation of a domestic violence protection order under N.D.C.C. § 14–07.1–06." *Holte*, ¶ 13. Thus, a defendant charged with violating a domestic violence protection order under N.D.C.C. § 14–07.1–06 may present an affirmative defense of unwitting, innocent, or mistaken conduct.

[¶ 12] However, this is not an appeal from Olson's conviction under N.D.C.C. § 14–07.1–06 for violating a domestic violence protection order. This is an appeal from orders entered in a proceeding to revoke Olson's probation for violating conditions of probation imposed upon his conviction of a crime; it did not arise out of "a felony violation of N.D.C.C. § 14–07.1–06," as Olson has asserted, and does not involve "criminal responsibility."

[¶ 13] When Olson pleaded guilty in Morton County District Court to three counts of violating a domestic violence protection order, one of the orders placing him on probation specified:

> The defendant is placed on probation for a period of *2 yrs* and shall not violate this Order or any municipal, state, or federal laws and such probation is: ☐ unsupervised ☒ supervised and subject to the additional conditions set forth by the Court. ☐ supervision suspended for a period of _____, failure will result in additional conditions set in Appendix A.

In the other two orders, both the "supervised" and the "supervision suspended" boxes were checked. Appendix A to the orders specified, among others, the following conditions:

> 12. No contact with Lisa Johner.

> 13. ANY VIOLATION OF THE PROTECTION ORDER IS A VIOLATION OF PROBATION.

It is clear that the probation condition specifying "No contact with Lisa Johner" included no element of willfulness. Where willfulness is not required, a defendant may present an affirmative defense of unwitting, innocent, or mistaken conduct in accordance with decisions such as *State v. Holte*, 2001 ND 133, 631 N.W.2d 595, and *State v. Michlitsch*, 438 N.W.2d 175 (N.D. 1989). Olson argues he was denied the opportunity to present such a defense. However, from our review of the probation revocation hearing transcript, we conclude Olson did in fact present a *Michlitsch*-type affirmative defense based upon allegedly unwitting, innocent, or mistaken conduct. That defense simply did not prevail. Because Olson was permitted to present such a defense, we need only address Olson's asserted right to present a defense of lack of criminal responsibility.

[¶ 14] "Probation revocation, like parole revocation, is not a stage of a criminal prosecution." *Gagnon v. Scarpel-*

*li,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The full panoply of rights due a defendant in a criminal proceeding does not apply to a probation revocation hearing. *See Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Revocation "is often preferred to a new prosecution because of the procedural ease of recommitting the individual on the basis of a lesser showing by the State." *Id.* at 479, 92 S.Ct. 2593. "Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* at 483, 92 S.Ct. 2593. If the trial court believes a probationer has not taken probation as seriously as he or she should have, the court may revoke probation and require imprisonment to make the appropriate personal impact on the probationer. *State v. Gates,* 540 N.W.2d 134, 138 (N.D. 1995); *State v. Toepke,* 485 N.W.2d 792, 795 (N.D.1992).

▮ [¶ 15] If·an alleged probation violation is contested, the prosecution must establish the violation by a preponderance of the evidence. N.D.R.Crim.P. 32(f)(2). We apply a two-step analysis in reviewing a probation revocation—first reviewing the trial court's factual finding of a probation violation under the clearly erroneous standard, and then reviewing the trial court's determination the violation warranted revocation of probation under an abuse of discretion standard. *State v. Gates,* 540 N.W.2d 134, 137 (N.D.1995); *State v. Monson,* 518 N.W.2d 171, 173 (N.D.1994); *State v. Saavedra,* 406 N.W.2d 667, 669 (N.D.1987).

▮ [¶ 16] Insanity generally is not a defense in a proceeding to revoke probation or parole. 2 Neil P. Cohen, *The Law of Probation and Parole,* §§ 22:21, 22:40 (2d ed.1999); *see also People v. Breaux,* 101 Cal.App.3d 468, 161 Cal.Rptr. 653, 657 (1980); *State v. Qualls,* 50 Ohio App.3d 56, 552 N.E.2d 957, 962 (1988). Professor Cohen has explained:

> The rule regarding insanity may be best explained by reference to the often misunderstood nature of parole and probation. Unlike a criminal trial, a probation or a parole revocation is not designed to punish the violator. Rather, what is being determined is whether continued conditional release is appropriate. If the probationer's or parolee's mental condition prevents adherence to reasonable conditions which were selected because they contributed either to the alleged violator's rehabilitation or to the public safety, revocation may be necessary even though punishment for any crime committed during the period of insanity may be barred by the insanity defense.

2 *Cohen,* § 22:24. Although insanity is not a defense in determining if the defendant violated a condition of probation, it may be a relevant mitigating factor in determining if probation should be revoked. *Breaux,* 161 Cal.Rptr. at 657; *Qualls,* 552 N.E.2d at 962. Furthermore, it is clear that Olson's conditions of probation prohibited him from having any contact with Johner, not merely willful contact with Johner. Thus, the relevant issue was whether he violated the conditions of his probation, not why he violated the conditions.

[¶ 17] We conclude the trial court did not err in striking Olson's asserted lack of mental responsibility as a defense to the alleged violation of the conditions of Olson's probation.

### IV

[¶ 18] The orders and judgment are affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.